UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| DUANE GRAVES, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | |
| | * | Civil Action No. 14-14756-MGM |
| CAROLYN W. COLVIN, | * | |
| Acting Commissioner of Social Security | * | |
| Administration, | * | |
| | * | |
| Defendant. | * | |

MEMORANDUM AND ORDER REGARDING
PLAINTIFF'S MOTION FOR ORDER REVERSING
THE COMMISSIONER'S DECISION AND DEFENDANT'S
MOTION TO AFFIRM THE DECISION OF THE COMMISSIONER
(Dkt. Nos. 17 and 23)

January 21, 2016

MASTROIANNI, U.S.D.J.

## I.   INTRODUCTION

This is an action for judicial review of a final decision by Carolyn Colvin, the acting Commissioner of the Social Security Administration ("Commissioner"), regarding an individual's entitlement to Supplemental Security Income ("SSI") pursuant to 42 U.S.C. § 1383(c)(3) (referring to 42 U.S.C. § 405(g)). Duane Graves ("Plaintiff") asserts the Commissioner's decision denying him such benefits—memorialized in a September 27, 2013 decision of an administrative law judge ("ALJ")—is in error. He has filed a motion for order reversing the Commissioner's decision and the Commissioner has moved to affirm.

For the following reasons, the court allows Plaintiff's motion to the extent it seeks a remand (Dkt. No. 17) and denies the Commissioner's motion (Dkt. No. 23).

II.   BACKGROUND

Plaintiff was born on November 20, 1970. (Administrative Record ("A.R.") at 79.) He reached, but did not complete, a ninth grade education and can read and write in English. (*Id.* at 51.) He has five children and he maintains contact with his two youngest children. (*Id.* at 52.) Previously, Plaintiff worked as a barber, convenience store cashier, snowmaking machine operator, and groundskeeper. (*Id.* at 53–54, 62.)

Plaintiff filed an application for SSI benefits on March 8, 2012, alleging "knee problems" with an onset date of March 1, 2011.[1] (*Id.* at 79, 23, 234.) This application was denied initially on June 15, 2012, (*id.* at 119–21, 23), and on reconsideration on August 22, 2012. (*Id.* at 125–27, 23.) Plaintiff then requested a hearing in front of an administrative law judge, which took place on July 2, 2013. (*Id.* at 45–74.)

A.   <u>Medical History on Record</u>

Plaintiff claimed his physical symptoms have limited his ability to work. (A.R. at 234.) Plaintiff made monthly appointments to follow up on his chronic knee pain and renew his prescriptions. On March 18, 2009, Dr. Stefan Topolski at Trailside Health assessed Plaintiff's congenital bilateral knee dislocations. (*Id.* at 325.) He opined Plaintiff's knee pain had persisted despite previously undergoing surgical interventions. (*Id.*) On May 26, 2009, Dr. Joseph Sklar of New England Orthopedic Surgeons, Inc. performed a bilateral knee arthroscopy and removed his

---

[1] Plaintiff alleges March 8, 2011 as the onset date relative to his claim. (A.R. at 231.) In his decision, the ALJ limited the scope of his disability determination to the period beginning March 8, 2012, the date of Plaintiff's application for SSI. (*Id.* at 25.) Plaintiff has not disputed the ALJ's determined onset date for purposes of this court's review. (*See* Def.'s Mem. in Support Mot. Affirm Comm'r's Decision at 9, n.9.) The court views the medical evidence of record in its entirety to place Plaintiff's symptoms into a larger context, but assumes the relevant period for disability purposes began at the March 8, 2012 onset date.

knee hardware—presumably inserted during one of his previous five surgeries—to address Plaintiff's persistent knee pain. (*Id.* at 303, 305–08, 325, 329.) On October 26, 2009, Lisa Miller at Trailside Health stated Plaintiff's "[M]ay surgery helped shin pain, but not joint pain. Knees hurt all the time." (*Id.* at 329.)

The record strongly suggests Plaintiff's physicians were concerned he struggled with substance abuse. Plaintiff was prescribed Percocet for his pain; he claimed he misplaced his prescription and his physicians thereafter required random pill counts. (*Id.* at 325, 327–30.) Dr. Topolski noted "numerous conflicting reports of substance use or diversion that cannot be corroborated nor confirmed." (*Id.* at 330.) He later prescribed Plaintiff Tramadol which "help[ed] less but [was] still effective" and did not seem to implicate his substance abuse problems. (*Id.* at 340.)

On September 22, 2010, Dr. Topolski again indicated Plaintiff's chronic knee pain and tenderness continued after his May of 2009 procedure. (*Id.* at 340.) Dr. Topolski further stated Plaintiff's knee "swelled up badly" after he "hit a tree working" the previous week. (*Id.* at 337, 340.) On February 9, 2011, Dr. Topolski indicated Plaintiff continued Tramadol during his workday but at night "the pain roll[ed] back in." (*Id.* at 339.) He prescribed Plaintiff Vicodin but discussed with him the possible risks of addiction. (*Id.* at 340.)

On May 12, 2011, Dr. Topolski assessed "severe swelling" in Plaintiff's knees from working, which lasted five days despite his pain medication and icing daily. (*Id.* at 342.) On April 6, 2011, he further opined that, even with continued Tramadol and Vicodin, Plaintiff's knee pain was "worse with harder working" and intensified when Plaintiff stopped moving. (*Id.* at 343.) On August 11, 2011, Dr. Topolski stated Plaintiff had discontinued working due to knee pain and was trying to find other options. (*Id.* at 346.) Lisa Miller stated, on September 8, 2011, Plaintiff used more Tramadol during "hurricane/flood clean up" but was otherwise steady with his medication throughout the day.

(*Id.* at 350.)  On three occasions between October 26, 2011 and March 8, 2012, Plaintiff's physicians indicated Plaintiff claimed he lost access to his medication.  (*Id.* at 353, 356–58, 362.)

On January 16, 2013, Dr. Topolski stated Plaintiff was applying for disability payments and renewed his prescriptions.  (*Id.* at 406–07.)  He further opined there was "no change" with respect to Plaintiff's chronic pain and encouraged Plaintiff to engage in activity as he could tolerate it.  (*Id.* at 407.)  At an appointment for paperwork on March 6, 2013, Dr. Topolski summarized Plaintiff's impairment: "[B]orn with congenital bilateral dislocated knees and has had [five] surgeries since age [twenty-six]; cannot replace as [there is] not enough bone and surgeon is afraid that they won't last." (*Id.* at 398.)  Dr. Topolski further indicated Plaintiff had skipped Vicodin the previous month, "would like it again," and was "trying to use as little as possible."  (*Id.*)  On April 17, 2013, Dr. Topolski opined Plaintiff's chronic knee pain was "controlled somewhat with medications" which helped him move around.  (*Id.* at 395–96.)  Dr. Topolski renewed Plaintiff's prescriptions for Tramadol and Vicodin on May 15, 2013 and stated Plaintiff's knees were worsening.  (*Id.* at 394–95.)

B.   <u>Administrative Hearing</u>

An administrative hearing occurred on July 2, 2013 before Administrative Law Judge Addison C. S. Masengill.  (*Id.* at 45.)  Plaintiff testified his impairment gave him difficulty with driving, travelling on uneven ground, traversing stairs, sitting, standing for longer than fifteen to twenty minutes, and cooking for sustained periods.  (*Id.* at 52–53, 63–65.)  He estimated his pain level was a six or seven out of ten with pain medication, and a ten without.  (*Id.* at 57.)  Plaintiff stated he would need knee replacement when he is older.  (*Id.*)  He explained he had no diagnosed mental health issues, but received Trazodone for his feelings of depression and anxiety.  (*Id.* at 58.)

Following Plaintiff's testimony, the ALJ posed to a vocational expert a hypothetical assuming an individual with Plaintiff's age, education, work experience, and limitation to sedentary work.  (*Id.* at 69–72.)  The vocational expert testified such a hypothetical individual could not

perform his past work as a barber, convenience cashier, or snowmaking machine operator. (*Id.* at 69–70.) The vocational expert further testified the hypothetical individual would be able to work in other sedentary and unskilled positions available in the national economy which offer an option for sitting and standing at will, such as inspection table worker, surveillance system monitor, or jewelry preparer/polisher. (*Id.* at 70–71.) When asked to account for the hypothetical individual being off-task for twenty-five percent of the work day due to chronic pain, the vocational expert testified this would lead to termination in any work. (*Id.* at 72.)

C.  Decision of the ALJ

Following the hearing, the ALJ issued a decision on September 27, 2013 denying Plaintiff's application for SSI benefits. (A.R. at 20, 23.) Plaintiff then filed an initial request for review with the Appeals Council on October 9, 2013; the Appeals Council thereafter granted a request for extension of time on September 18, 2014. (*Id.* at 18, 7.) Ultimately, the Appeals Council denied review of Plaintiff's case on October 28, 2014, thus making the decision of the ALJ final. (*Id.* at 1.) Plaintiff thereafter filed the instant action, the Commissioner compiled the administrative record, and the parties submitted the cross-motions presently at issue.

III.  STANDARD OF REVIEW

The role of a district court in reviewing an administrative law judge's decision is limited to determining whether the conclusion was supported by substantial evidence and based on the correct legal standard. *See* 42 U.S.C. §§ 405(g) and 1383(c)(3); *Manso-Pizarro v. Sec'y of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996) (per curiam). Substantial evidence is such relevant evidence as a reasonable mind accepts as adequate to support a conclusion. *Rodriguez v. Sec'y of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981). The Supreme Court has defined substantial evidence as "more than a mere scintilla." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The court must uphold a Commissioner's conclusion "if a

reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support his conclusion," even if multiple other conclusions could be drawn from it. *Rodriquez*, 647 F.2d at 222. Additionally, it is the Commissioner's responsibility to weigh conflicting evidence and decide issues of credibility. *Id.*

### IV. DISABILITY STANDARD AND THE ALJ'S DECISION

An individual is entitled to SSI benefits if he is disabled and demonstrates financial need on or after the date of the SSI application. *See* 42 U.S.C. § 1381a. Plaintiff's financial need is not at issue here. The Social Security Act (the "Act") defines disability, in part, as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). An individual is considered disabled under the Act

> only if his physical and mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B). *See generally Bowen v. Yuckert*, 482 U.S. 137, 146–49 (1987).

In determining disability, the Commissioner applies the following five-step analysis, as outlined by the First Circuit:

> 1) if the applicant is engaged in substantial gainful work activity, the application is denied; 2) if the applicant does not have, or has not had within the relevant time period, a severe impairment or combination of impairments, the application is denied; 3) if the impairment meets the conditions for one of the "listed" impairments in the Social Security regulations, then the application is granted; 4) if the applicant's "residual functional capacity" is such that he or she can still perform past relevant work, then the application is denied; 5) if the applicant, given his or her residual functional capacity, education, work experience, and age, is unable to do any other work, the application is granted.

*Seavey v. Barnhart*, 276 F.3d 1, 5 (1st Cir. 2001) (citing 20 C.F.R. § 416.920).

In the instant case, the ALJ first found Plaintiff had not engaged in substantial gainful activity during the relevant period between March 8, 2012 and September 27, 2013. (A.R. at 25.) Second, the ALJ found Plaintiff's "knee pain due to congenital arthropathy and adjustment disorder" to be severe. (*Id.*) Third, neither of Plaintiff's severe impairments were found to meet the severity of those listed in 20 C.F.R. § 404, subpt. P, app. 1 (2015). (*Id.*) Fourth, the ALJ determined Plaintiff had the residual functional capacity ("RFC") to perform sedentary work, limited to work involving unskilled tasks. (*Id.* at 27.) The ALJ further found Plaintiff must avoid workplaces which would require him to operate challenging "foot and leg controls, heights, ladders, ropes, and scaffolding," or "work on uneven ground." (*Id.*) The ALJ also found Plaintiff must avoid more than occasional climbing, "stooping, crouching, crawling, [or] kneeling" and be permitted to "sit and stand at will." (*Id.*) Fifth, the ALJ determined Plaintiff was unable to perform any past relevant work "as a barber, cashier, [or] snow making machine operator." (*Id.* at 38.) Nevertheless, the ALJ found Plaintiff capable of performing alternative work as an inspector table worker, surveillance monitor, and polisher—occupations available in significant numbers in the national economy. (*Id.* at 39.) Therefore, Plaintiff was determined not to be disabled. (*Id.*)

## V.     ANALYSIS

Plaintiff advances three arguments challenging the ALJ's decision. First, Plaintiff asserts the ALJ erred in failing to afford controlling weight to the opinions of his treating physician, which left his RFC determination unsupported by substantial evidence. Second, he argues the ALJ's credibility determination is not supported by substantial evidence. Third, Plaintiff claims the ALJ posited an incomplete hypothetical question to the vocational expert at the administrative hearing, thus leaving the ALJ's conclusion reached at step five unsupported by substantial evidence. The Commissioner counters that substantial evidence supports the ALJ's RFC finding because the ALJ properly considered the opinions of Plaintiff's treating physician. Further, the Commissioner asserts the ALJ,

in reaching his conclusion, properly considered the Plaintiff's credibility and properly relied on the vocational expert's testimony.

An administrative law judge must give controlling weight to opinions of a "treating source" if those opinions are "well-supported by medically acceptable clinical and laboratory diagnostic techniques and [are] not inconsistent with the other substantial evidence" in the record. *See* 20 C.F.R. § 416.927(c)(2). When controlling weight is not afforded to the treating source's opinion, an administrative law judge must consider the length, nature, and extent of the treatment relationship, the opinion's supportability and consistency with the medical record in its entirety, the treating source's area of specialization, and any other factors relevant to making such a determination. *See* 20 C.F.R. § 416.927(c)(2)–(6). Regarding the weight ultimately assigned to the treating source's opinion, the administrative law judge must provide "good reasons" supporting his or her decision. *See* 20 C.F.R. § 416.927(c)(2).

Plaintiff's treating physician of over nine years, Dr. Topolski—whom the parties agree was a "treating source"—provided two opinions which are presently at issue. (A.R. at 36–37.) On January 16, 2013 and May 22, 2013, he completed two Residual Functional Capacity Questionnaires. (*Id.* at 386–87, 428–30.) In both his January and May 2013 responses, he stated Plaintiff could walk roughly one city block without rest or significant pain. (*Id.* at 386, 428.) He indicated Plaintiff required a job which permitted him to shift positions at will and to take unscheduled breaks during an eight-hour workday. (*Id.* at 386, 428.) Dr. Topolski assessed Plaintiff as having no limitations in his ability to repetitively engage in reaching, handling, or fingering. (*Id.* at 387, 429.)

In his January response, Dr. Topolski opined Plaintiff's congenital arthropathy had shown no improvement despite five surgeries on each knee, whereas in May he stated Plaintiff's prognosis had "continued worsening." (*Id.* at 386, 428.) Dr. Topolski assessed how often Plaintiff's symptoms would interfere with his attention and concentration required to perform simple work-related tasks.

8

In January, Dr. Topolski answered they would "seldom" interfere, but he indicated in May they would "constantly" interfere. (*Id.* at 386, 428.) Dr. Topolski did not note any side effects of Plaintiff's medication in January, whereas in May he indicated Plaintiff experienced "stomach upset, risk of addiction, [and] no relief" which may have impacted his capacity for work. (*Id.* at 386, 428.) In his January response, Dr. Topolski estimated Plaintiff could sit, stand, and walk fifteen minutes at one time, for a total of two hours in an eight-hour workday. (*Id.*) In May, he increased these amounts to sitting forty-five minutes at one time for a total of three hours in a hypothetical eight-hour workday, and standing and walking thirty minutes at a time for a total of four hours. (*Id.* at 428.) Dr. Topolski stated in January Plaintiff could frequently lift ten pounds, occasionally lift twenty pounds, and never lift fifty pounds. (*Id.* at 387.) In May, he estimated Plaintiff could frequently carry twenty pounds, never lift twenty pounds, and never lift or carry fifty pounds. (*Id.* at 429.) In relation to this assessment, he opined Plaintiff "cannot bend easily or get out of a squat." (*Id.*) Ultimately, in January, he concluded Plaintiff was not physically capable of working an eight-hour workday on a sustained basis. (*Id.* at 387.) His May conclusion, however, was that Plaintiff was physically capable of working an eight-hour workday on a sustained basis and had previously done so "with sufficient accommodations."[2] (*Id.* at 429.)

The ALJ granted "little weight" to the two opinions Dr. Topolski provided. (*Id.* at 37.) The ALJ reasoned Dr. Topolski's opinions were inconsistent with the medical and documentary record which showed (a) "improvement in knee pain with the use of medications and no evidence of physical therapy, injections, or surgical intervention since the alleged onset date"; (b) "no evidence of psychiatric hospitalizations, counseling, or visits to the emergency department due to psychiatric

---

[2] The court notes the seeming internal inconsistencies within these two opinions. (*See id.* at 386–87, 428–30.) However, the ALJ did not cite any internal inconsistency as a basis for reaching his decision regarding Dr. Topolski's opinions. (*See id.* at 37.) *See Chiasson v. Astrue*, No. 10-CV-248-JD, 2010 WL 5173307, at *7 (D.N.H. Dec. 14, 2010). Therefore, the court need not inquire into the effect of such inconsistencies, if any, on the ALJ's disability determination.

symptoms"; and (c) "an ability to partake in many activities of daily living despite allegedly disabling symptoms." (*Id.*) The court concludes this explanation for discounting Dr. Topolski's opinion is inadequate and, thus, it is unclear whether the ALJ properly evaluated this treating source opinion.

First, the court fails to see the inconsistency between Dr. Topolski's opinions and the medical and documentary record regarding medication or lack of additional treatment. With regard to improvements to Plaintiff's condition with medication, the ALJ failed to account for the evidence indicating Plaintiff likely had an opioid addiction, which made it difficult for him to rely on more effective forms of pain medication. (*Id.* at 261, 340, 397–98.) Dr. Topolski's opinions are consistent with this evidence and point to the "risk of addiction [and lack of] relief" as side effects of Plaintiff's current pain medication regimen. (*Id.* at 428.) With regard to the absence of alternative treatment such as physical therapy, injections, or surgery, the court finds neither the medical records nor Dr. Topolski's opinions indicate alternative treatments were possibilities for Plaintiff. For instance, Plaintiff was specifically recommended *against* further surgical intervention until he turns fifty due to lack of bone and cartilage in his knees. (*Id.* at 325, 329–30, 398.) The ALJ was not free to speculate whether these hypothetical alternative treatments would have improved Plaintiff's condition—and therefore undermine the opinions of Plaintiff's treating physician—when the medical records do not indicate they would. *See Doucette v. Astrue*, 972 F. Supp. 2d 154, 169 (D. Mass. 2013) ("Importantly, an 'ALJ is not free to substitute his own judgment for uncontroverted medical opinion.'") (quoting *Rose v. Shalala*, 34 F.3d 13, 18 (1st Cir. 1994)).

Second, as to the absence of psychiatric treatment, Plaintiff did not claim a disabling psychiatric condition, nor did he seek SSI benefits relating to such a condition.[3] (*See id.* at 234.) The

---

[3] The record shows Plaintiff suffers from, but is not disabled by, depression and anxiety. (A.R. at 58.) Plaintiff has not been medically diagnosed with these conditions but has nonetheless sought mental health counseling and also receives medication to manage them. (*Id.* at 58, 238, 364–69, 399.) These conditions, however, are not a basis for Plaintiff's application for SSI benefits.

10

basis for Plaintiff's application for SSI benefits was his "knee problems" which limited his ability to work. (*Id.*) In any event, there does not appear to be an inconsistency between the medical record and Dr. Topolski's opinions as to the impact of Plaintiff's physical impairments on his ability to concentrate on work-related activities. Dr. Topolski's RFC Questionnaires addressed Plaintiff's knee condition and its impact on Plaintiff's ability to perform work-related tasks; they shed no light on Plaintiff's mental health. (*See id.* at 386, 428.) Dr. Topolski's other assessments which did address Plaintiff's mental health do not indicate he suffered a disabling psychiatric condition. For example, in a statement provided to Disability Determination Services on June 8, 2012, Dr. Topolski stated Plaintiff had "full normal mental [and] psychiatric health." (*Id.* at 379.) Therefore, the absence of records relating to a psychiatric condition does not support the ALJ's decision to discredit the opinions of Dr. Topolski.

Third, the ALJ provided no explanation for his conclusory finding that Plaintiff's ability to participate in activities of daily living ("ADLs") is inconsistent with Dr. Topolski's opinions, and thus it is not clear to the court there is an inconsistency. The opinions Dr. Topolski expressed in his RFC Questionnaire relate specifically to Plaintiff's ability to engage in gainful activity, such as lifting particular amounts of weight, concentrating on instructions, and standing and walking during a typical workday. (*Id.* at 386–87, 428–29.) Dr. Topolski made no reference to Plaintiff's ability to cook, drive, or shop for groceries, Plaintiff's daily activities on which the ALJ relied in evaluating Plaintiff's credibility. (*Id.* at 29.) In addition, the court sees a notable difference between the ability to perform ADLs and the sort of work-specific activities referred to in Dr. Topolski's opinions, and the ALJ provided no explanation as to their apparent contradiction. *See Ormon v. Astrue*, No. 11–2107, 2012 WL 3871560, at *6 (1st Cir. Sept. 7, 2012) ("[T]here is a 'difference between a person's being able to engage in sporadic physical activities and her being able to work eight hours a day five consecutive days of the week.'") (quoting *Carradine v. Barnhart*, 360 F.3d 751, 755 (7th Cir. 2004)); *see*

*also Waters v. Bowen*, 709 F. Supp. 278, 284 (D. Mass. 1989) ("[S]uch [sporadic and transitory] tasks can be performed intermittently, when the individual is not experiencing severe pain or before the pain caused by such activity becomes overwhelming. Thus, such tasks do not require the sustained effort necessary for any substantial, sustained, and regular gainful employment."). Absent such an explanation, the court is left to speculate as to why this asserted contradiction should support the ALJ's conclusion to discredit Dr. Topolski's medical opinions.

Moreover, without more adequate explanation, the court cannot determine whether the ALJ properly evaluated these treating source opinions. The court is thus unable to determine whether a proper evaluation of Dr. Topolski's opinions would have led the ALJ to give these opinions more weight and changed his ultimate disability conclusion. Accordingly, it is necessary to remand the matter for further administrative proceedings. *See Seavey*, 276 F. 3d at 12 ("When an agency has not considered all relevant factors in taking action, or has provided insufficient explanation for its action, the reviewing court ordinarily should remand the case to the agency."). In light of this determination, the court need not address Plaintiff's or the Commissioner's additional arguments.[4]

VI. CONCLUSION

For the foregoing reasons, the court ALLOWS Plaintiff's Motion for Order Reversing the Commissioner's Decision (Dkt. No. 17), to the extent it seeks a remand, and DENIES the

---

[4] In particular, the court has not considered the Commissioner's post-hoc rationalizations for supporting the ALJ's decision to discredit Dr. Topolski's medical opinions. For instance, the Commissioner asserted the ALJ properly considered Dr. Topolski's opinions since they were in the form of checklists and "wholly inconsistent" between January and May. (Def.'s Mem. in Support Mot. Affirm Comm'r's Decision at 12–13.) As Plaintiff argues, in assessing an administrative action, the court generally must limit its review to the reasons stated in the ALJ's decision. *See Chiasson*, 2010 WL 5173307, at *7 ("[I]n the context of reviewing a social security decision, the court is limited [to] evaluating the decision 'based solely on the reasons stated in the decision,' which precludes consideration of other grounds as a means to salvage an otherwise deficient decision.") (quoting *Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004)); *see also Lyons ex rel. X.M.K.L. v. Astrue*, No. 12-30013-KPN, 2012 WL 5899326, at *6–7 (D. Mass. Nov. 26, 2012).

Commissioner's Motion to Affirm the Commissioner's Decision (Dkt. No. 23).  The clerk shall enter judgment for the Plaintiff, and this case is remanded for further administrative action.

It is So Ordered.

                                                                                                                                                /s/  Mark G. Mastroianni        
                                                          MARK G. MASTROIANNI
                                                          United States District Judge